# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REVOLUTION MONITORING, LLC | § | Case No. 18-33730-hdh |
| | § | |
| REVOLUTION MONITORING MANAGEMENT, LLC | § | Case No. 18-33731-hdh |
| | § | |
| REVOLUTION NEUROMONITORING LLC | § | Case No. 18-33732-hdh |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| MEDARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC. | § | Adversary No. 20-03115-hdh |
| *Plaintiff*, | § | |
| v. | § | |
| AETNA HEALTH INC. | § | |
| *Defendant*. | § | |

**PLAINTIFF MEDARC, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT AETNA HEALTH INC.'S MOTION TO WITHDRAW THE REFERENCE**

## **TABLE OF CONTENTS**

I.    **INTRODUCTION**..................................................................................................1

II.   **FACTUAL BACKGROUND**................................................................................4

III.  **ARGUMENT AND AUTHORITIES**....................................................................5

     A.   **The Bankruptcy Court should conduct all pretrial matters.**............................5

     B.   **Mandatory withdrawal is not warranted because this case will not require analysis of unsettled non-bankruptcy law**. ........................................................6

     C.   **Permissive withdrawal is not warranted because the *Holland America* factors weigh against withdrawal**..................................................................................10

          i.   **Aetna has not demanded a jury trial and may never be entitled to one**.10

          ii.  **The presence of non-core claims does not require withdrawal**. ...............11

          iii. **The Bankruptcy Court's familiarity with issues underlying this proceeding will lead to expediency, efficiency, and the economical use of resources**. ...................................................................................................12

          iv.  **Withdrawal of the reference will not reduce forum shopping**..................14

IV.  **PRAYER**................................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Burch v. Freedom Mortgage Corp.*,
　No. 3:18-CV-2731-M-BH, 2019 WL 4935187 (N.D. Tex. 2019) ........................................7, 9

*Burleigh v. Hometown Credit, LLC*,
　575 B.R. 154 (S.D. Miss. 2017) ..........................................................................................7, 9

*Calamia v. Spivey*,
　632 F.2d 1235 (5th Cir. 1980) ................................................................................................11

*City Bank v. Compass Bank*,
　No. EP–11–MC–372–KC, 2011 WL 5442092 (W.D. Tex. 2011) ....................5, 12, 13, 14

*Curtis v. Cerner Corp.*,
　No. 7:19-cv-00417, 2020 WL 1983937 (S.D. Tex. 2020) .....................................................10

*Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.*,
　No. 3-85-1755-H, 1985 WL 17671 (N.D. Tex. Nov. 7, 1985) ............................................8, 9

*Holland Am. Ins. Co. v. Succession of Roy*,
　777 F.2d 992 (5th Cir. 1985) ..................................................................................................12

*In re AgFeed USA, LLC*,
　565 B.R. 556 (D. Del. 2016) ...................................................................................................13

*In re Beck*,
　No. 13–mc–00016–CG–C, 2013 WL 5676232 (S.D. Ala. 2013) ............................................6

*In re: Hoku Corporation*,
　No. 4:15-cv-391-BLW, 2015 WL 5898286 (D. Idaho 2015) ...................................................6

*In re Johns-Manville Corp.*,
　63 B.R. 600 (S.D.N.Y. 1986) ...................................................................................................8

*In re Morrison*,
　409 B.R. 384 (S.D. Tex. 2009) .........................................................................................10, 11

*In re National Gypsum Co.*,
　145 B.R. 539 (N.D. Tex. 1992) .......................................................................................6, 7, 8

*Koehler v. Aetna Health Inc.*,
　683 F.3d 182 (5th Cir. 2012) ..................................................................................................11

*Levine v. M & A Custom Home Builder & Developer, LLC*,
   400 B.R. 200 (S.D. Tex. 2008) ...................................................................................................5

*Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*,
   161 B.R. 21 (E.D. La. 1993) .....................................................................................................8

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ..................................................................................................................8

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ....................................................................................................................8

*Post Confirmation Bd. of Wadleigh Energy Grp., Inc. v. Wadleigh*,
   516 B.R. 850 (E.D. La. 2014) ...................................................................................................5

*Texas United Housing Program, Inc. v. Wolverine Mortgage Partner Retirement*,
   2017 WL 3822754 (N.D. Tex. 2017) ................................................................................ *passim*

**Statutes**

28 U.S.C. § 157(a) ........................................................................................................................12

28 U.S.C. § 157(d) ................................................................................................................2, 6, 7

29 U.S.C. § 1104 .........................................................................................................................2, 5

29 U.S.C. § 1109 .........................................................................................................................2, 5

29 U.S.C. § 1132(a)(1)(B) ..........................................................................................................2, 4

29 U.S.C. § 1132(a)(2) ...............................................................................................................2, 5

29 U.S.C. § 1132(a)(3) ...............................................................................................................2, 4

**Other Authorities**

Special Order No. 13-18 .................................................................................................................3

Plaintiff MedARC LLC, as collection agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC ("Plaintiff" or "MedARC") files this Response in Opposition to Defendant Aetna Health Inc.'s ("Aetna" or "Defendant") Motion to Withdraw the Reference ("Response"). In support of its Response, MedARC states as follows:

## I. INTRODUCTION

In this case, MedARC seeks reimbursement for millions of dollars in neural monitoring services it performed for Aetna's insureds. This case is one of at least twenty adversary proceedings MedARC has filed in the bankruptcy court on behalf of the Liquidating Trustee, several of which allege similar ERISA and state law claims against other health insurance companies and health plans.[1] Several defendants, including Aetna, have moved for withdrawal of the reference of this proceeding from the bankruptcy court, but all of their arguments for mandatory or permissive withdrawal are premature or otherwise meritless.

**Immediate withdrawal of the reference is unwarranted.** As an initial matter, immediate withdrawal of the reference is not required because the bankruptcy court is in the best position to efficiently manage pretrial proceedings given its familiarity with the parties and underlying issues and given that it is uncertain whether a jury trial right will even exist on any claims if Aetna prevails on its preemption and other defenses.[2] Thus, unless and until jury trial

---

[1] MedARC has employed McKool Smith to represent it in five of those proceedings. *MedARC, LLC v. Humana, Inc. et. al, Inc.*, Adversary No. 20-03113-hdh (09/18/20); *MedARC, LLC v. Blue Cross Blue Shield Association, et. al*, Adversary No. 20-03112-hdh (09/18/20); *MedARC, LLC v. Cigna Behavioral Health of Texas*, Adversary No. 20-03116-hdh (09/18/20); *MedARC, LLC v. UnitedHealth Group Incorporated, et. al*, Adversary No. 20-03114-hdh (09/18/20).

[2] Aetna Defendant filed its Motion to Dismiss [Doc. No. 11] and Brief in Support [Doc. No. 13] on November 24, 2020.

issues are ripe, withdrawal is premature and the bankruptcy court should retain the proceeding through pretrial for all purposes, including discovery and dispositive motions.

**Defendant has not carried its burden to show mandatory withdrawal is required.** 28 U.S.C. §157(d) requires mandatory withdrawal of a reference when the case will require "substantial and material consideration" of non-bankruptcy federal law needing "significant interpretation." Mandatory withdrawal does not apply to cases requiring straightforward application of settled law. Aetna has not even argued that this proceeding will require more than a straightforward application of the applicable sections of ERISA[3] to the facts set forth in the Complaint. Nor has Defendant pointed to any areas of open or unresolved issues of law that the bankruptcy court would be forced to consider.

**Defendant has also not carried its burden to show cause for permissive withdrawal.** The remaining *Holland America* factors weigh in favor of allowing the bankruptcy court to retain the reference. As mentioned above, the first factor, whether a party has a right to a jury trial, does not support withdrawal of the reference because Aetna has not invoked its right to a jury trial and will not have a right to a jury trial if it is successful on its preemption and other defenses.

The second factor, whether the nature of the proceeding is core or non-core, does not support withdrawal of the reference because Judge Hale is already familiar with this case, including the parties, Revolution's pre-bankruptcy business operations, Revolution's efforts to recover its medical receivables, and the documentary evidence.[4]

---

[3] Plaintiff's ERISA claims include claims under U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) to recover benefits under health benefit plans and 29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1104, and 29 U.S.C. § 1109, related to fiduciary duties of loyalty and care.

[4] *See, e.g.*, Am. Joint Disclosure Statement of Revolution Monitoring, LLC [Doc. No. 82]; Tr. of Final Mot. for Relief from Automatic Stay (Direct Examination of Jeremiah Vance) at 78 [Doc. No 74]; Tr. of the Test. of Mark Flores During the Hearing of Mot. for 2004 Examination of Corporate Representatives [Doc. No 200]; Order (I) Granting Liquidating Trustee's Motion for Rule 2004 Examination and (II) Ordering Limited Produc. of Docs.

The third and fourth factors, economical use of the debtors' and creditors' resources and expedition of the bankruptcy process support maintaining the reference because the bankruptcy remains open post-confirmation, and keeping this and the other related adversary proceedings in the bankruptcy court would likely result in fewer fees, including attorneys' fees, that MedARC would have to pay.[5] Maintaining the case in bankruptcy court is especially desirable given COVID-19's impact on judicial proceedings and the district court's continuance of all civil jury trials.[6]

The fifth factor, promotion of uniformity in bankruptcy administration supports maintaining the reference because the bankruptcy court is in the best position to manage the dozens of adversary proceedings related to the ongoing bankruptcy in a uniform manner.

The sixth factor, discouraging forum shopping, supports maintaining the reference because Aetna is seeking to withdraw the reference in order to avoid proceedings in front of a bankruptcy judge who has allowed Rule 2004 discovery to proceed against it and its affiliates and who has approved a Plan authorizing the very claims brought in this proceeding. *See* Order [Doc. No. 201]. Further, Aetna has not put forth any arguments showing that forum shopping or confusion would be reduced by withdrawing the reference.

As such, the Court should deny Defendant's motion to withdraw the reference and allow the bankruptcy court to proceed with handling all pretrial matters, only withdrawing the reference if and when a jury trial becomes necessary.

---

[Doc. No 201]. Unless otherwise noted, all docket entry references are to *In re Revolution Monitoring, LLC*, Bankruptcy Case No. 18-33730-hdh (Judge Hale).

[5] Plan Supplement to the Debtors' Second Joint Plan of Reorganization Dated July 11, 2019 at 3.04(e) [Doc. No. 146].

[6] Special Order No. 13-18, U.S. District Court for the Northern District of Texas (Chief Judge Barbara Lynn) (November 19, 2020).

## II. FACTUAL BACKGROUND

Before its bankruptcy, Revolution was a medical provider that offered intraoperative neurophysiological monitoring ("IONM" or "IOM") medical services to neuro, orthopedic, vascular, and ear-nose-and-throat (ENT) surgeries operating around delicate parts of the nervous system. *See* Plaintiff's Original Complaint, *MedARC, LLC v. Aetna Health, Inc.*; Adversary No. 20-03115-hdh at ¶ 13 ("Complaint") [Doc. No. 1]. Revolution rendered medical services to patients who were the insureds of Aetna, requiring Aetna to pay under the terms of health benefit plans. *Id.* at ¶¶ 19-20. Revolution provided medical services to those patients for the claims at issue between June 2014 and July 2017. *Id.* at ¶ 1.

Defendant failed to properly reimburse Revolution for the services that Revolution rendered to Defendant's insureds. *Id.* Defendant underpaid Revolution on more than 200 claims exceeding $40,000,000 in rendered medical services, contributing to the nearly $450 million in medical receivables that forced Revolution into Chapter 11. *Id.*; *see also* Am. Joint Disclosure Statement of Revolution Monitoring, LLC [Doc. No. 82].

On September 27, 2018, Revolution Monitoring, LLC filed its Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas, with Chief Judge Hale presiding over the Debtors' bankruptcy.[7] On September 18, 2020, MedARC commenced this adversary proceeding by filing a complaint against Aetna for failure to properly reimburse Revolution for medical services rendered to Aetna's insureds. MedARC has brought claims under ERISA's civil enforcement provisions, including claims to recover benefits under health benefit plans 29 U.S.C. 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) and for violations the fiduciary

---

[7] The Revolution Monitoring Management bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as case no. 3:18-bk-33731. The Revolution Neuromonitoring, LLC bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as case no. 3:18-bk-33732.

duties of loyalty and care under 29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1104, and 29 U.S.C. § 1109, along with state law claims. Aetna has filed a motion to dismiss and the parties are scheduled to submit a scheduling order and discovery plan with the Court by December 8, 2020.

### III.    ARGUMENT AND AUTHORITIES

#### A.    The Bankruptcy Court should conduct all pretrial matters.

The Court should allow the bankruptcy court to handle all pretrial matters and only withdraw the reference if and when a jury trial becomes necessary. Courts have routinely deferred withdrawing the reference until a proceeding is ready for trial, especially where the bankruptcy court is familiar with the underlying issues in the case. *See e.g.*, *City Bank v. Compass Bank*, No. EP–11–MC–372–KC, 2011 WL 5442092, at *6 (W.D. Tex. 2011) (denying motion to withdraw the reference in a non-core adversary proceeding and allowing the bankruptcy court to manage pretrial proceedings until "a jury trial becomes necessary"); *Post Confirmation Bd. of Wadleigh Energy Grp., Inc. v. Wadleigh*, 516 B.R. 850, 856 (E.D. La. 2014) (denying motion to withdraw the reference as premature until such time as it was determined that a jury trial must be conducted); *Texas United Housing Program, Inc. v. Wolverine Mortgage Partner Retirement*, No. 3:17-cv-977-L, 2017 WL 3822754, at *10 (N.D. Tex. 2017) (concluding that a party's demand for a jury trial did not weigh in favor of withdrawing the reference because "courts generally do not withdraw a reference on this basis until it is readily apparent that the jury trial rights are jeopardized" (internal marks omitted)); *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 207 (S.D. Tex. 2008) ("the right to a jury trial does not preclude a bankruptcy court from resolving pretrial dispositive motions. A right to a jury trial does not arise until jury issues are presented.").

Due to the case background and procedural posture, the bankruptcy court is already familiar with the parties, Revolution's business, what the Plan refers to as Debtors' "medical

receivables," and the factual and documentary issues likely to arise in this proceeding. Allowing the bankruptcy court to supervise pretrial and discovery matters will result in the most economical and expedient use of judicial resources, especially given that any jury trial right is speculative at this point.

Further, even though Aetna has not shown it is entitled to mandatory withdrawal, the bankruptcy court can handle all pretrial matters even in cases requiring mandatory withdrawal. *See, e.g.*, *In re Beck*, No. 13–mc–00016–CG–C, 2013 WL 5676232, at *1 (S.D. Ala. 2013) (concluding that withdrawal of the reference was mandatory under 28 U.S.C. § 157(d), but delaying withdrawal until the bankruptcy court certifies the case is ready for trial and through all discovery and pretrial issues, including dispositive motions); *In re: Hoku Corporation*, No. 4:15-cv-391-BLW, 2015 WL 5898286, at *3 (D. Idaho 2015) ("First, just because withdrawal is mandated does not mean the Court must immediately withdraw the reference. Rather, the Court concludes that it may delay withdrawing the reference until the bankruptcy court certifies that the case is trial-ready.").

As such, the bankruptcy court should retain this proceeding through pretrial and the Court should withdraw the reference only in the event a jury trial becomes necessary.

> **B.** **Mandatory withdrawal is not warranted because this case will not require analysis of unsettled non-bankruptcy law.**

The need for the bankruptcy court to consider ERISA does not mandate withdrawal of the reference here because Defendant has not shown that this case will require any analysis of open or unresolved issues of non-bankruptcy law. Courts have cautioned that mandatory withdrawal of a reference applies only to a limited class of proceedings and is not intended to be an "escape hatch through which most bankruptcy matters [could] be removed to a district court." *In re National Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

6

Under section 157(d), the "district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Courts in the Fifth Circuit have interpreted "consideration" to mean "substantial and material consideration." *Texas United Housing Program, Inc.*, 2017 WL 3822754, at \*6.

Consideration is "substantial and material" where "the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law rather than the mere application of well-settled law." *Id.* (citing multiple cases); *see also Burch v. Freedom Mortgage Corp.*, No. 3:18-CV-2731-M-BH, 2019 WL 4935187, at \*7 (N.D. Tex. 2019) (concluding that mandatory withdrawal was not required because "[t]here are no unsettled questions of law presented by these claims"); *Burleigh v. Hometown Credit, LLC*, 575 B.R. 154, 159 (S.D. Miss. 2017) (denying motion to withdraw the reference and allowing bankruptcy court to supervise pretrial and discovery matters for purposes of judicial economy).[8]

Here, Defendants have not pointed to any areas of open and unresolved issues of law that the bankruptcy court would be forced to consider, let alone any areas that would require "significant" interpretation. Instead, MedARC's claims are straightforward ERISA claims that will require routine application of ERISA's provisions pertaining to claims process and adverse benefit determinations and its standards of liability to the facts of this case.

---

[8] At least some courts in the Northern District of Texas have suggested that mandatory withdrawal also requires substantial and material consideration of title 11 issues as a prerequisite, including those cases cited by Defendants. *See In re National Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (explaining that mandatory withdrawal also requires substantial and material consideration of title 11, and concluding that the claims at issue required such consideration) (citing *Sibarium v. NCNB Texas National Bank*, 107 B.R. 108, 111 (N.D.Tex.1989)). Under this standard, if substantial and material title 11 issues are not present in these proceedings, mandatory withdrawal is not the appropriate mechanism to withdraw the reference.

Further, the cases cited to by Aetna for the proposition that mandatory withdrawal is required in this case are distinguishable and inapposite.[9] In *In re National Gypsum Co.*, the party's claims arose out of an already ongoing patent infringement suit in district court that involved best mode and prior art validity issues along with antitrust defenses. *In re National Gypsum Co.*, 145 B.R. at 542. The court placed particular weight on the presence of antitrust defenses in concluding mandatory withdrawal was required, citing to non-binding case law from a district court in Kansas. *Id.* Further, unlike this case, the party opposing withdrawal admitted that the issues in the already ongoing patent litigation were complex. *Id.* As such, *National Gypsum Co.* is not dispositive here.[10]

In *In re Johns-Manville Corporation*, the district court found that mandatory withdrawal of the reference was required where liability and timing issues under CERCLA were significant and required the court to determine a conflict between the bankruptcy code and CERCLA. *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986) (concluding that the controversy fell within the category of cases that require consideration of both title 11 and other laws regulating interstate commerce where conflict between CERCLA and the automatic stay was a central issue).

Aetna's citation to *Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.* is also not dispositive because although the proceeding involved ERISA, the court did not apply the correct standard when analyzing the issue, and even if it had, *Great W. Sugar Co.* was a pension

---

[9] Aetna also cites *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, (1993), and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) for the proposition that mandatory withdrawal is required, but none of these cases involve withdrawal of the reference, let alone hold that that mandatory withdrawal of the reference was warranted in an ERISA case.

[10] Like *In re National Gypsum Co.*, the district court for E.D. Louisiana in *In re Liljeberg* found mandatory withdrawal appropriate because the proceeding would involve significant application of antitrust illegality issues, unreasonable restraint, unfair trade practices, among other things. *Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21, 25 (E.D. La. 1993). The Court did caution that withdrawal is not always required any time antitrust issues arise. *Id.*

8

termination case that involved at least seven sections of ERISA, procedures for properly confirming termination, along with interpretation of Internal Revenue Code provisions. *Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.*, No. 3-85-1755-H, 1985 WL 17671, at *1-2 (N.D. Tex. Nov. 7, 1985).

Moreover, the cases cited by Aetna were all decided nearly thirty years ago when "[f]ew courts have had the opportunity to interpret the mandatory withdrawal language of the section." *Id.* at *1. Since that time, as noted above, courts in the Fifth Circuit, including the Northern District of Texas have recognized that for mandatory withdrawal to apply, and to avoid turning it into an escape hatch, "the court must undertake analysis of <u>significant open and unresolved issues</u> regarding the non-title 11 law rather than the mere application of well-settled law." *See e.g.*, *Texas United Housing Program, Inc.*, 2017 WL 3822754, at *7 (emphasis added) (concluding that application of the Fair Housing Act did not warrant mandatory withdrawal where party failed to identify any "unsettled questions of law that the Court would be forced to consider"); *Burch*, 2019 WL 4935187, at *7 (concluding that mandatory withdrawal was not required because "[t]here are no unsettled questions of law presented by these claims"); *Burleigh v. Hometown Credit, LLC*, 575 B.R. 154, 159 (S.D. Miss. 2017) (concluding that mandatory withdrawal of the reference was not required where proceeding did not require the court to interpret unsettled questions under the Truth in Lending Act and the Equal Credit Opportunity Act). The court in *Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.* did not even analyze whether the claims would require interpretation of open and unresolved issues, let alone significant interpretation.

As such, because Aetna's cases are distinguishable and because it has not shown or even suggested that this case will involve anything other than the straightforward application of well-settled law, the Court should find mandatory withdrawal is not warranted.

### C. Permissive withdrawal is not warranted because the *Holland America* factors weigh against withdrawal.

Aetna has also not shown that permissive withdrawal of the reference is warranted. As the party seeking withdrawal of the reference, Aetna bears the burden of establishing cause for permissive withdrawal. *In re Morrison*, 409 B.R. 384, 389 (S.D. Tex. 2009). In determining whether cause exists for permissive withdrawal, the Court must consider, (1) whether a party has a right to a jury trial; (2) whether the nature of the proceeding is core or non-core; (3) whether withdrawal promotes the economical use of the debtors' and creditors' resources; (4) whether withdrawal will expedite the bankruptcy process; (5) whether withdrawal will promote uniformity in bankruptcy administration; and (6) whether withdrawal motivates forum shopping. *Id.* (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)).

#### i. Aetna has not demanded a jury trial and may never be entitled to one.

Reservation of the right to potentially demand a jury trial does not require withdrawal of a reference to a bankruptcy court. Aetna mistakenly complains that the Court must withdraw the reference because it has not consented to a jury trial in front of the bankruptcy court. But Aetna has not demanded a jury trial. Aetna merely "reserves" its right to demand a jury trial. *See* Aetna's Brief in Support of Mot. to Withdraw ("Aetna Brief") at 9 ("In the event these claims are not dismissed, Aetna intends to exercise its rights at the appropriate time to demand a jury trial to the greatest extent permissible by law"); *see also* Aetna Brief at 8 ("Aetna intends to assert its Seventh Amendment right to a jury trial"). Even in the cases Aetna cites, the mere reservation of a jury-trial right does not mandate withdrawal. *See Curtis v. Cerner Corp.*, No. 7:19-cv-00417,

2020 WL 1983937, at *4 (S.D. Tex. 2020) ("However, the R&R notes that some Defendants have merely reserved their right to request a jury trial, but that no party has yet requested a jury trial. The Court has not been presented with authority or any reason that reservations of rights to request a jury trial should be treated the same as a jury demand.").

Further, if Aetna prevails on its preemption and other defenses, no jury trial right will exist for the remaining ERISA claims. *See* Aetna Brief at 7, n. 8 ("ERISA also provides a preemption defense to the state-law claims asserted . . ."); *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 191 (5th Cir. 2012) ("We note that there is no right to a jury trial in ERISA denial-of-benefits cases") (citing *Calamia v. Spivey*, 632 F.2d 1235, 1236–37 (5th Cir. 1980)).  Aetna admits as such in its Brief. *See* Aetna Brief at 9, n. 10 ("While there is no jury trial for the ERISA claims . . ."). Thus, in Aetna's view, after the bankruptcy court rules on motions to dismiss, no claims carrying a right to a jury trial will remain.

Since Aetna has not yet demanded a jury trial, and since it predicts that it will never be entitled to one, withdrawal of the reference based on the potential need for a jury trial would be premature at this point.

ii.     **The presence of non-core claims does not require withdrawal.**

Even where an adversary proceeding asserts *only* non-core claims, Courts have recognized that withdrawal on the basis of perceived inefficiencies created by the report and recommendation scheme that Congress created is not automatic grounds for withdrawal. *See In re Morrison*, 409 B.R. 384, 391 (S.D. Tex. 2009) (district court adopting Judge Isgur's recommendation against withdrawal of the reference even with the presence of all non-core claims where other factors weighed in favor of retaining the reference). This is especially true where no jury trial right or demand exists and other factors weigh against withdrawal. *See id.*

11

(noting that "no party has a live jury demand"); *City Bank*, 2011 WL 5442092, at *6 (concluding that although the proceeding involved only non-core claims, and the party had a jury trial right, the bankruptcy court was in "the best position to monitor discovery and narrow the issues to be resolved at trial" therefore denying motion to withdraw the reference).

Congress explicitly authorized bankruptcy courts to resolve "related to" non-core matters.[11] 28 U.S.C. § 157(a). As the Fifth Circuit has observed:

> Bankruptcy courts are authorized "to function much like [a] magistrate[ ] to the district court on matters that are merely 'related to' a bankruptcy," or that are otherwise unable to be finally adjudicated by that court, could considerably expedite the litigation.

*See Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).

Here, although this proceeding involves non-core claims, the bankruptcy court is in the best position to monitor discovery, of which Judge Hale already has familiarity with the types of documents material to this case, and to narrow the issues to be resolved at trial, if trial proceeds. As such, this factor weighs against a withdrawal of the reference. Further, the remaining applicable *Holland America* factors weigh against withdrawal of the reference.

### iii. The Bankruptcy Court's familiarity with issues underlying this proceeding will lead to expediency, efficiency, and the economical use of resources.

Aetna also has not shown that withdrawal of the reference would promote the economical use of debtors' and creditors' resources. Bankruptcy aims to maximize the efficient use of resources to administer the debtor's estate and resolve related litigation. *Texas United Housing Program, Inc.*, 2017 WL 3822754, at *7. The speed at which the bankruptcy court could determine this proceeding even in light of COVID-19, along with the other related proceedings

---

[11] Defendant appears to question the bankruptcy court's "related to" jurisdiction over this proceeding. However, the bankruptcy court has post-confirmation jurisdiction over this and the other adversary proceedings filed by MedARC because they pertain to the implementation or execution of the confirmed plan. Moreover, the Plan expressly reserves bankruptcy jurisdiction in this proceeding. [Doc. No. 138] at Art. 14. MedARC reserves all rights to assert that bankruptcy jurisdiction is proper in this proceeding.

that involve identical claims, similar documentary evidence, and similar facts, would translate into fewer fees and expenses required to be incurred by MedARC. Requiring MedARC to litigate its adversary proceedings in both the bankruptcy court and the district court, with differing schedules and procedures, may result in unnecessary expenses, delays and rulings.[12]

Aetna argues that the bankruptcy court's "expertise" is not necessary and that "judicial and litigant economy favor determination of the claims by the District Court once." Aetna Brief at 13. However, where a bankruptcy court is already readily familiar with the parties and issues related to the underlying the action, allowing the court to adjudicate the proceeding will lead to judicial efficiency, expediency and uniformity even if the bankruptcy court must submit reports and recommendations. *See, e.g.*, *City Bank*, 2011 WL 5442092, at *6; *Texas United Housing Program, Inc.*, 2017 WL 3822754, at *7; *see also In re AgFeed USA, LLC*, 565 B.R. 556, 564 (D. Del. 2016) (concluding that in a post-confirmation adversary proceeding brought by the trustee, the bankruptcy court's familiarity with the parties, issues, and events that precipitated the Chapter 11 filing and that were the underlying basis for the claims was an important consideration that weighs in favor of maintaining the reference).

Here, the bankruptcy court is familiar with MedARC, the Trustee, and Aetna and its affiliates, as they have appeared in the main case in multiple hearings. Through its administration of Revolution's Chapter 11 bankruptcy, the bankruptcy court is familiar with Revolution's medical receivables. Indeed, the bankruptcy court has held multiple hearings in the main case related to documents sought from Aetna and its affiliates, in addition to defendants in other related adversary proceedings. This includes a hearing on August 19, 2020 on the Trustee's Motion to Compel Production and Motion for Reconsideration filed against Aetna and its affiliates for production of plan documentation, including insurance policies, appeal documents,

---

[12] Defendants in some, but not all, other related adversary proceedings have filed motions to withdraw the reference.

denial codes and explanation of denial codes, among other documents and information, related to Revolution's Aetna insured patients. Hearing on Am. Second Mot. for 2004 Examination [Doc. No. 264].

Thus, the bankruptcy court's familiarity with the issues would expedite the pace at which it could submit proposed findings of facts and conclusions of law in this proceeding and MedARC's numerous other adversary proceedings filed against other insurers, outweighing any small delay caused by the district court having to review the bankruptcy court's reports and recommendations. As such, these factors weigh against a withdrawal of the reference.

### iv. Withdrawal of the reference will not reduce forum shopping.

Aetna has not shown how withdrawal of the reference would reduce forum shopping or confusion. Courts recognize that motions to withdraw "pose significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion." *City Bank*, 2011 WL 5442092, at *6. Although the bankruptcy court has not yet ruled in this proceeding, Judge Hale has ruled against Aetna and its affiliates in the main case as it relates to the trustee's Rule 2004 discovery.[13] If anything, it is reasonable to assume that Aetna is seeking to withdraw the reference in order to avoid proceedings before a bankruptcy judge who has ruled against it on discovery motions and who approved a Plan authorizing the very claims brought in this proceeding. As such, this factor weighs against withdrawal of the reference.

### IV. PRAYER

Because the bankruptcy court is already familiar with the parties and underlying issues that will predominate in this proceeding and because it is uncertain at this stage whether any jury

---

[13] Order (I) Granting Liquidating Trustee's Motion for Rule 2004 Examination and (II) Ordering Limited Produc. of Docs. [Doc. No 201]; Order Granting in Part the Liquidating Trustee's Motion for Reconsideration [Doc. No. 266]; Order Granting in Part the Liquidating Trustee's Motion to Compel Produc. [Doc. No. 267].

14

trial issues will remain after dispositive motions are ruled upon, the Court should deny Aetna's motion to withdraw the reference and allow the bankruptcy court to proceed with handling all pretrial matters, only withdrawing the reference if and when a jury trial becomes necessary. The Court should further deny Aetna's motion to withdraw the reference because mandatory withdrawal is not required and the additional permissive factors do not weigh in favor of withdrawal at this time.

Dated:  December 1, 2020

Respectfully submitted,

/s/ *Lewis T. LeClair*
Lewis T. LeClair
Texas State Bar No. 12072500
**McKool Smith, P.C.**
300 Crescent Court Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

/s/ *Nicholas A. Foley*
Nicholas A. Foley
Texas State Bar No. 07208620
8146 San Fernando Way
Dallas, Texas 75218

***ATTORNEYS FOR PLAINTIFF MEDARC, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via mail and the Court's ECF system on December 1, 2020.

*/s/ Lewis T. LeClair*
Lewis T. LeClair

4832-6488-2642